UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLIE J. JONES; <br> CORTNEY MOSLEY; <br> ROBERT HENDERSON; and <br> JOHN SEAY WARREN, <br><br> Plaintiffs, <br><br> v. <br><br> THE KENT SALES & SERVICE CORPORATION; <br> M.A. OZTEKIN; <br> SHARRON HARBISON; and <br> JIM THOMAS, <br><br> Defendants. | CASE NO. 2:12-cv-00251-SLB |

**MEMORANDUM OPINION**

This case is presently before the court on defendant Jim Thomas's Partial Motion to Dismiss.  (Doc. 9.)[1]  Upon consideration of the Motion, the relevant law, and arguments of counsel, the court is of the opinion that defendant's Motion is due to be denied.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

1

# I. FACTS AND PROCEDURAL HISTORY[2]

Plaintiffs Charlie Jones ("Jones"), Cortney Mosley ("Mosley"), Robert Henderson ("Henderson"), and John Seay Warren ("Warren") (collectively "plaintiffs") are current and former employees of defendant, Kent Sales & Service Corporation ("Kent"), and are current or former coworkers of defendants M.A. Oztekin ("Oztekin"), Sharron Harbison ("Harbison"), and Jim Thomas ("Thomas") (collectively "defendants"). (*See* doc. 1.) Plaintiffs are African-Americans and allege that they endured a "continuing pattern and practice of racial discrimination and retaliation" while employees of Kent. (Doc. 1 ¶¶ 1, 10-14.) The Complaint alleges that a multitude of racially discriminatory acts occurred during plaintiffs' tenure at Kent and that racially derogatory slurs and epithets were frequently directed at plaintiffs. (*See id.* ¶¶ 26-131.) The plaintiffs collectively assert claims against Kent for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. (Doc. 1 ¶¶ 132-51.) Plaintiffs also collectively assert a common law claim of negligence against Kent. (*Id.* ¶¶ 152-58.) Additionally, plaintiffs collectively assert their Title VII and Section 1981 claims against defendants Oztekin and Harbison in their individual capacities. (*Id.* ¶¶ 159-68.)

---

[2] The facts are drawn from the Complaint and for purposes of ruling on the Motion to Dismiss are accepted as true.

Jones individually asserts against Thomas claims of assault, wantonness, and intentional infliction of emotional distress, (doc. 1 ¶¶ 176-85); only the latter two are raised in Thomas's Motion. Jones is a supervisor in the "Finish/Assembly Department" at Kent. (Doc. 1 ¶ 21.) Thomas is a "foreperson employed by Kent." (*Id.* ¶ 38.) Jones's claims against Thomas all arise out of an incident at Kent where Thomas allegedly attempted to place a noose around Jones's neck. (*Id.* ¶¶ 38-39.)

Sometime between November and December 2010 a hangman's noose was first seen at Kent "displayed on the top of a toolbox belonging to Ronald Page, a Kent employee." (*Id.* ¶ 31.) According to the Complaint, Thomas was working at Kent on February 10, 2011, when he was approached by Thomas who "was in possession of the Noose." (*Id.* ¶¶ 38-39.) Jones had his back to Thomas, and as Thomas approached Jones, he "attempted to place [the noose] around the neck of . . . Jones." (*Id.* ¶ 39.) As Thomas attempted to place the noose around Jones's neck, Mosely alerted Jones to what was happening. (*Id.* ¶ 40.) Jones then exclaimed: "Get away from me with that noose." (*Id.* ¶ 41.) Thereafter, Thomas left Jones's workstation and Jones reported the incident to the Kent Plant Manager. (*Id.* ¶ 42.) Jones alleges that as a direct result of Thomas's "intentional . . . [and] wanton" attempt to place the noose around his neck that he "has been damaged and suffered losses including, but not limited to, emotional distress, physical and mental anguish, and pain and suffering." (*Id.* ¶ 182.)

Prior to initiating this action, plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 29, 2011. (*Id.* ¶ 6.) Plaintiffs were issued determination letters dated September 8, 2011, which "informed Plaintiffs that [the EEOC] found that the Defendants subjected the Plaintiffs [to] unlawful racial harassment." (*Id.*) Jones, Mosley, and Henderson were issued Right to Sue notices dated January 12, 2012. (*Id.* ¶ 8.) Warren was issued a Right to Sue notice dated January 18, 2012. (*Id.* ¶ 9.) Thereafter, plaintiffs filed their Complaint on January 24, 2012. (*See* doc. 1.) Thomas filed the Partial Motion to Dismiss that is currently before the court on February 13, 2012. (Doc. 9.) Plaintiffs filed their Response in opposition on March 13, 2012. (Doc. 16.) Thomas filed his Reply Brief in Support on March 16, 2012. (Doc. 18.)

## II. MOTION TO DISMISS STANDARD

Thomas moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. The purpose of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of plaintiffs' statement of a claim for relief. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997) (per curiam). "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)

(internal quotation marks and citations omitted).  The allegations in the Complaint are accepted as true and are construed in the light most favorable to plaintiffs.  *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011).  "[T]he complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*.'"  *Id*. (quoting *Am. Dental Ass'n*, 605 F.3d at 1289).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Also, the court does not assume that plaintiffs can prove facts they have not alleged or that defendants have violated the law in ways that have not been alleged.  *Id.* at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, brackets, and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citation omitted).  Thus, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, that is to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

### III. DISCUSSION

**A. Count XI–Outrage**

Thomas's Motion seeks dismissal of Jones's state law claim of intentional infliction of emotional distress ("outrage")[3] pled against Thomas under Count XI of the Complaint.[4] Specifically, Thomas argues that Jones fails to state a claim of outrage because the allegations in the Complaint do not satisfy Alabama's narrow standard of

---

[3] In Alabama, the tort of outrage is synonymous with intentional infliction of emotional distress. *See Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 630 (Ala. 2010).

[4] Thomas's Motion refers to Count VII of the Complaint regarding Jones's claim of outrage, however, as the Response to Thomas's Motion points out, (doc. 16 at 5 n.6), and as is evident on the face of the Complaint, Count XI is the only claim of outrage made by Jones against Thomas. The court assumes that Thomas mistakenly references Count VII instead of Count XI and reads the Motion accordingly.

extreme conduct required for the tort. (Doc. 9 ¶ 4.) The court disagrees. The allegations in the Complaint, accepted as true and construed in the light most favorable to Jones, sufficiently state a cause of action for the tort of outrage.

In Alabama, the elements required to state a claim for the tort of outrage include the following: "'a plaintiff must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011) (quoting *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)), *reh'g denied* (June 10, 2011). The Alabama Supreme Court narrowly defined the second element listed above: "'By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043-44 (Ala. 1993) (quoting *Am. Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)). In *Thomas*, the Alabama Supreme Court reiterated that "the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Id.* at 1044. Furthermore, the Court in *Thomas* highlighted that at the time that case was decided (approximately 12 years since outrage was first recognized in Alabama as a tort), the Court had "found a jury question on an outrage claim . . . [in] only three categories: 1) . . . wrongful conduct in the context of family burials, . . . 2) . . . where insurance agents employed heavy-handed, barbaric means

in attempting to coerce the insured into settling an insurance claim, . . . and 3) . . . egregious sexual harassment." *Id.* (citations omitted).

While it is well-settled that the tort of outrage is recognized in Alabama only under limited and extreme circumstances, the Supreme Court of Alabama has recently indicated that the three categories outlined in *Thomas* are not the only types of claims that may constitute outrage:

> That is not to say, however, that the tort of outrage is viable in only the three circumstances noted in [*Thomas*]. Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction.

*Little*, 72 So. 3d at 1172-73 (citing *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011)).[5]  The Complaint alleges several incidents of conduct that could be considered racially harassing.  Unfortunately, the Complaint is not always clear about what each particular plaintiff experienced.  For instance, paragraphs 33 - 35 allege that racial comments were "repeatedly made."  *See* ¶ 33.  However, the Complaint does not allege that such comments were directed to any plaintiff, overheard by any plaintiff, or that any plaintiff was even aware of the statements.

Turning to the allegations of harassment in the Complaint pertaining to plaintiff Jones, the court finds the allegations are sufficient to state a claim of outrage.  The Complaint alleges that a hangman's noose "five to six feet long, made from thick-gauged rope and painted red," was "displayed openly in the Kent facility" where plaintiffs

---

[5] At least one other Federal District Court in Alabama has held that based on *Little*, when the complaint states a plausible claim of outrage, the plaintiff may survive a motion to dismiss even though the facts do not fall into any of the categories outlined in *Thomas*.  *Allen v. Cypress Vill., LTD.*, No. 3:10–CV–994–WKW, 2011 WL 2559614, at *3 (M.D. Ala. June 27, 2011).  In *Allen*, the plaintiff, a mentally disabled tenant of the defendant apartment complex alleged that defendants committed multiple hostile acts, including wrongful attempts to evict plaintiff and denying plaintiff rent reductions.  *Id.* at *2.  The court found that notwithstanding the narrow application of the tort of outrage in Alabama, plaintiff's claim survived defendants' motion to dismiss:

> "Plaintiff no doubt faces a high hurdle on her tort of outrage claim. However, based upon *Little*, the court is reluctant to dismiss the claim at the pleading stage based upon an argument that the facts of this case do not fall within the categories of outrageous behavior previously identified by the Alabama Supreme Court."

*Id.* at *3.

worked.  (*Id.* ¶ 30.)  Count XI alleges that Thomas intentionally and wantonly attempted "to place the hangman's Noose around the neck of . . . Jones."  (*Id.* ¶ 184.)  Jones claims that as a result of Thomas's attempt to place the noose around his neck, he has "suffered losses including, but not limited to, emotional distress, physical and mental anguish, and pain and suffering."  (*Id.* ¶ 185.)

The court finds that the allegations in the Complaint, taken as true, satisfy the three elements required to state a claim of outrage in Alabama.  Accepting as true the facts stated in the Complaint, Thomas, a white coworker, intentionally tried to place the noose around the neck of Jones, his black coworker.  In the court's opinion, this alleged conduct states a claim of extreme and outrageous conduct "'beyond all possible bounds of decency . . . and . . . regarded as atrocious and utterly intolerable in a civilized society.'"  *Thomas*, 624 So. 2d at 1043-44 (quoting *Inmon*, 394 So. 2d at 365).  Aside from the fact that a noose can be used to physically harm another, plaintiffs point out the more obvious connotation of displaying such an object in the workplace: a noose "is a symbol of intense racial hatred" and well-recognized as such, especially in the south.  (Doc. 16 at 7); *see also Woods v. Austal, U.S.A., LLC*, CIV.A. No. 09-0699-WS-N, 2011 WL 1380054, at *20 (S.D. Ala. Apr. 11, 2011) ("Unquestionably, nooses are racially charged symbols of hatred and oppression, particularly in the Deep South."); *In re Armentrout*, BK No. 06-71069-CMS-7, 2010 WL 60917, at *8 (Bankr. N.D. Ala. Jan. 5, 2010) ("noose[s] [are] . . . symbol[s] of racial hatred."); *McKenzie v. Citation Corp.*, CIV.A. No. 05-0138-CG-C,

2007 WL 1424555, at *13 (S.D. Ala. May 11, 2007) ("A noose is a historical symbol of racial hatred for African-Americans and can represent a severe physical threat." (citation omitted)). Given the alleged racially charged environment at Kent coupled with Thomas's act of attempting to place the noose around Jones's neck, it is plausible that Jones could suffer severe and unendurable emotional distress as result of the event.

Thomas attempts to trivialize the allegations as "joking around . . . amount[ing] to nothing more than trivial insults." (Doc. 10 at 7 (internal quotation and citation omitted).)[6] However, this incident goes well beyond "insults, indignities, threats, annoyances, [and] petty oppression," which the Alabama Supreme Court does not recognize as actionable under a claim of outrage. *Inmon*, 394 So. 2d at 364-65 (internal quotations and citation omitted); *see also McKenzie*, 2007 WL 1424555, at *13 (noting in the context of discrimination claims, "[c]learly, the display of nooses in the workplace should not be cast aside as a light joke or teasing"). Tellingly, the only Eleventh Circuit case Thomas cites for the proposition that "courts have refused to recognize [a claim of outrage] based on similar and more egregious facts" is based on Florida common law and does not involve the allegation of an attempt by a white coworker to place a noose *around the neck* of a black coworker. (Doc. 10 at 7 (citing *Vance v. S. Bell Tel. & Tel. Co.*, 983

---

[6]While a jury may or may not accept defendant's version, the issue before the court is whether the allegations in the Complaint are sufficient to state a claim.

F.2d 1573, 1574 n.2, 1575 n.7 (11th Cir. 1993)).)[7]  There is nothing trivial about the allegation underlying Jones's claim of outrage.  And while Jones ultimately bears the burden of proof, the court is satisfied at this stage of the proceedings that he has provided "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

### B. Count X–Wantonness

Thomas's Motion also argues that Jones's claim of wantonness, which is based on the same alleged attempt by Thomas to place a noose around Jones's neck, is due to be dismissed by operation of the Alabama Workers' Compensation Act ("the Act"), ALA. CODE § 25-5-1 *et seq*.  (Doc. 9 at 4.)  Specifically, Thomas contends that Jones's wantonness claim is barred by the so-called exclusivity provisions of the Act, which prohibit plaintiff employees from seeking compensation or damages for certain injuries

---

[7]In *Vance*, nooses were twice left at plaintiff's work station.  As noted in the dissent to the majority's holding that defendant was not liable on the intentional infliction of emotional distress claim,

> "[t]he noose in this context is a symbol not just of racial discrimination or of disapproval, but of terror. Those of us for whom a particular symbol is just that-a symbol-may have difficulty appreciating the very real, very significant fear that such symbols inspire in those to whom they are targeted. No less than the swastika or the Klansman's hood, the noose in this context is intended to arouse fear.  If a jury would not cry "Outrageous!" upon hearing these facts . . .  I cannot think of a set of facts for which it would."

*Vance*, 983 F.2d at 1583.

sustained while working, except through a claim made under the Act. (Doc. 10 at 9.) As discussed more fully below, the court finds that based on the allegations in the Complaint, the Act does not bar Thomas from asserting his claim of wantonness.

Two key provisions of the Act, Sections 25-5-52 and -53 provide that the Act establishes the sole legal remedies for certain types of workplace injuries in Alabama.[8] Section 25-5-52 states that except as provided in the Act, "no employee of any employer subject to . . . [the Act] . . . shall have a right to any other method, form, or amount of compensation or damages for an injury . . . occasioned by an accident" that proximately results from and occurs during his employment. Similarly, Section 25-5-53 states that "[t]he rights and remedies granted in this chapter to an employee shall exclude all other rights and remedies of the employee . . . at common law, by statute, or otherwise on account of injury . . . ." The operative word in both sections is "injury," to which the Act attaches a specific definition. Section 25-5-1(9) defines "injury" as an "accident arising out of and in the course of employment." While the definition includes "physical injury,"

---

[8] The intent and purpose underlying Alabama's decision to enact such laws to the exclusion of most private civil tort remedies has been described by one Alabama treatise as follows:

> [T]he [Alabama] legislature resolved that employees and their dependents who lost earnings or support due to a work-related accident would receive compensation without having to prove negligence or wrongful conduct on the part of anyone at the worksite. In return, the statute generally eliminates the right of the employee or others claiming through or on behalf of the employee to look to any other law for greater or different relief.

2 ALABAMA WORKERS' COMPENSATION § 19:2.

it excludes injury intentionally inflicted by coworkers as well as "mental disorder or mental injury that has neither been produced nor been proximately caused by some physical injury to the body." ALA. CODE § 25-5-1(9).

Without addressing the allegations in the Complaint, Thomas's Brief in Support simply argues that the Act "clearly" bars Jones's wantonness claim. (Doc. 10 at 9.) This argument assumes, however, that the conduct underlying Jones's claim produced an "injury," which is included within the scope of the Act and not excluded from coverage as an injury resulting from willful conduct. Aside from the definition of injury under Section 25-5-1(9), "Section 25-5-11(b) limits the scope of the exclusivity rule by providing, in pertinent part, that '[i]f *personal injury* . . . to any employee results from the willful conduct, as defined in subsection (c) herein, of any . . . employee of the same employer . . . , the employee shall have a cause of action against the person.'" *Thermal Components, Inc. v. Golden*, 716 So. 2d 1166, 1168 (Ala. 1998) (emphasis added) (quoting ALA. CODE § 25-5-11(b)). Section 25-5-11(c)(1) defines willful conduct, in part, as "[a] purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of 'willful conduct.'" By contrast, the Alabama Supreme Court has defined wantonness as "'the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or

probably result.'" *Golden*, 716 So. 2d at 1168 n.2 (alteration in original) (quoting *Reed v. Brunson*, 527 So. 2d 102, 119 (Ala. 1988)). Thus, Alabama courts have held that in the context of injuries, wherein an employee's claim is not subject to the exclusivity rule due to willfulness, "evidence of negligent or wanton conduct is insufficient to establish the 'willful conduct' required by § 25-5-11(c)." *Id.* at 1168.

Thomas cites *Golden* to support the proposition that the exclusivity provisions "clearly bar negligence or wantonness claims." (Doc. 10 at 9-10.) However, that case is distinguishable because the plaintiff's injuries were undisputably physical, and the only issue on appeal was whether the defendants' conduct was excluded from the Act as willful. *Golden*, 716 So. 2d at 1168-69. In *Golden*, the plaintiff's suit arose out of injuries he allegedly suffered on the job due to overexposure to lead. *Id.* at 1167. Among other claims, the plaintiff asserted that two of his coworkers negligently or wantonly caused his injuries by failing to properly train him and provide adequate safety equipment to prevent exposure to lead. *Id.* at 1168. The defendants' motion to dismiss in *Golden*, which argued plaintiff's claims were barred under the Act's exclusivity provision, was denied by the trial court. On appeal, the coworker defendants argued that the plaintiff's injuries and the claims arising therefrom could only be excluded under the Act if the plaintiff asserted that defendants willfully injured him. *Id.* After discussing the exception to the Act for willful conduct and comparing the definitions of willfulness and wantonness, the Alabama Supreme Court held plaintiff's general allegations of

negligence and wantonness did not satisfy the definition of willfulness under Section 25-5-11(c)(1). *Id.* at 1169. The trial court's denial of defendants' motion to dismiss was reversed. *Id.* at 1170. Thus, the holding in *Golden* does not stand for the proposition that all wantonness claims involving workplace injuries are subsumed under the act. Rather, it is inferred from *Golden* that *if* the exception under Section 25-5-11(b) is to apply, a claim for an injury that would normally fall within the Act must contain evidence to satisfy the Act's definition of willfulness. *Id.* A general allegation of wantonness, by definition, does not state the conduct required for a claim of willfulness. *Id.*

At least one Alabama court has held that claims of wantonness based on workplace injuries may be excluded from the Act depending on the nature of the plaintiff's injury. *See Bullin v. Correctional Med. Servs., Inc.*, 908 So. 2d 269 (Ala. Civ. App. 2004), *cert denied*, No. 1040346 (Ala. March 11, 2005). In *Bullin*, several employees sued their employer, Correctional Medical Services, Inc. ("CMS") for *inter alia* wantonly failing to ensure they would be protected from the wrongful conduct of prisoners while working in a prison health care unit. 908 So. 2d at 270-71. On August 31, 2000, the plaintiffs were working in a prison health care unit when several inmates held one plaintiff hostage with a knife. *Id.* at 272. The other plaintiffs avoided capture by hiding in a break room. *Id.* Although not physically harmed, plaintiffs claimed emotional injuries as a result of the ordeal. *Id.* Despite plaintiffs' claims that they suffered purely emotional injuries, the trial court granted CMS's motion for summary judgment, which argued that plaintiffs'

16

exclusive remedy was a claim under the Act. *Id.* at 271. On appeal, the Alabama Court of Civil Appeals analyzed plaintiffs' claimed injuries alongside the Act's specific definition of "injury" and concluded that plaintiffs' tort claims, including wantonness, were "not barred by the exclusivity provisions of the Act because the employees [were] undisputably *not seeking recovery for an 'injury' within the scope of the Act*." *Id.* at 272-73 (emphasis added). Thomas does not challenge the sufficiency of Jones's wantonness claim, rather his Brief in Support and Reply Brief argue that the claim is excluded under the Act. Having determined that a claim of wantonness is not *per se* barred under the Act, the court finds that Jones's claim is not automatically barred by operation of the Act.

Next, the court briefly addresses Thomas's argument that Jones's general allegation of physical injury renders his claim of wantonness barred under the Act's definition of injury. Under Count X of the Complaint, Jones states that "Thomas's intentional actions of attempting to place the . . . Noose around the neck of . . . Jones" proximately resulted in Jones suffering losses "including, but not limited to, emotional distress, physical and mental anguish, and pain and suffering." (Doc. 1 ¶¶ 181-82.) As discussed above regarding Jones's claim of outrage, it is certainly plausible that based on the allegations in the Complaint, Jones suffered emotional distress as a result of Thomas's conduct. However, other than his general damages statement, Jones does not specifically allege that he endured any physical pain or suffering. At the Motion to Dismiss stage, the court is unwilling to say that by operation of the Act, Jones fails to state a claim of

wantonness based on the general allegations that Jones "suffered losses including, but not limited to, emotional distress, physical and mental anguish, and pain and suffering." (*Id.* ¶ 182.) Nor does Thomas's argument that Jones bases his wantonness claim on the "same allegations," (doc. 18 at 4), as his claim of outrage persuade the court that Count X ought to be barred under the Act. *See, e.g.*, FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has . . . ."); *Green v. Roberts*, CIV.A. No. 10-0481-WS-M, 2011 WL 4915231, at *5 n.14 (S.D. Ala. Oct. 14, 2011) ("Indeed, it is bedrock principle of federal civil procedure that pleading in the alternative is an accepted practice."). Thus, the court finds that Jones sufficiently states a claim of wantonness.

## IV. CONCLUSION

Based on the foregoing and in accord with the court's Order entered contemporaneously herewith, Thomas's Partial Motion to Dismiss Counts X and XI of the Complaint will be denied.

**DONE** this 17th day of September, 2012.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE