FILED

2012 Sep-17  PM 01:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLIE J. JONES;** | } | |
| **CORTNEY MOSLEY;** | } | |
| **ROBERT HENDERSON; and** | } | |
| **JOHN SEAY WARREN,** | } | |
| | } | |
| **Plaintiffs,** | } | **CASE NO. 2:12-cv-00251-SLB** |
| | } | |
| **v.** | } | |
| | } | |
| **THE KENT SALES & SERVICE** | } | |
| **CORPORATION;** | } | |
| **M.A. OZTEKIN;** | } | |
| **SHARRON HARBISON; and** | } | |
| **JIM THOMAS,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is presently before the court on defendant M.A. Oztekin's Partial Motion to Dismiss.  (Doc. 7.)[1]  Upon consideration of the Motion,[2] the relevant law, and the arguments of counsel, the court is of the opinion that plaintiff's Motion is due to be granted in part and denied in part.

_____

[1] Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

[2] Plaintiffs point out and Oztekin acknowledges that his Motion, while styled as a partial motion to dismiss, actually seeks dismissal of all claims relating to Oztekin.  (Doc. 15 at 3 n.2; doc. 19 at 1 n.1.)  The court notes that the incorrect title does not affect this Opinion as each count raised in the Motion will be addressed.

## I. FACTS AND PROCEDURAL HISTORY[3]

Plaintiffs Charlie Jones ("Jones"), Cortney Mosley ("Mosley"), Robert Henderson ("Henderson"), and John Seay Warren ("Warren") (collectively "plaintiffs") are current and former employees of defendant Kent Sales & Service Corporation ("Kent") and are current or former coworkers of defendants M.A. Oztekin ("Oztekin"), Sharron Harbison ("Harbison"), and Jim Thomas ("Thomas") (collectively "defendants").  (*See* doc. 1.)  Oztekin is the owner of Kent.  (Doc. 1 ¶ 1.)

Plaintiffs are African-Americans, and they allege that they endured a "continuing pattern and practice of racial discrimination and retaliation" while employees of Kent.  (Doc. 1 ¶¶ 1, 10-14.)  The Complaint alleges that a multitude of racially discriminatory acts occurred during plaintiffs' tenure at Kent and that racially derogatory slurs and epithets were frequently directed at plaintiffs.  (*See id.* ¶¶ 26-131.)  The plaintiffs collectively assert claims against Kent for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.  (Doc. 1 ¶¶ 132-51.)  Plaintiffs also collectively assert a common law claim of negligence against Kent.  (*Id.* ¶¶ 152-58.)  Additionally, plaintiffs collectively assert their Title VII, Section 1981, and negligence claims against defendants Oztekin and Harbison in their individual capacities.  (*Id.* ¶¶ 159-68.)  Henderson individually brings claims of defamation against Kent, Oztekin, and Harbison.  (*Id.* ¶¶ 169-75.)  These claims are based

---

[3] The facts are drawn from the Complaint and for purposes of ruling on the Motion to Dismiss are accepted as true.

on allegations that Oztekin and others falsely accused Henderson of assaulting co-workers and brandishing a weapon in the presence of co-workers.  (*Id.* ¶¶ 121-22, 126, 170-74.)  Henderson was terminated on October 27, 2011, allegedly in connection or as a result of these accusations.  (*Id.* ¶ 124.)

Prior to initiating this action, plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 29, 2011.  (*Id.* ¶ 6.)  Plaintiffs were issued determination letters dated September 8, 2011, which "informed Plaintiffs that [the EEOC] found that the Defendants subjected the Plaintiffs [to] unlawful racial harassment."  (*Id.*)  Jones, Mosley, and Henderson were issued Right to Sue notices dated January 12, 2012.  (*Id.* ¶ 8.)  Warren was issued a Right to Sue notice dated January 18, 2012.  (*Id.* ¶ 9.)  Thereafter, plaintiffs filed their Complaint on January 24, 2012.  (*See* doc. 1.)

## II. MOTION TO DISMISS STANDARD

Oztekin moves to dismiss the Complaint for failure to state a claim upon which relief can be granted.  The purpose of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of plaintiffs' statement of a claim for relief.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997) (per curiam).  "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon

3

which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal quotation marks and citations omitted).  The allegations in the Complaint are accepted as true and are construed in the light most favorable to plaintiff.  *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011). "[T]he complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face.*'"  *Id*. (quoting *Am. Dental Ass'n*, 605 F.3d at 1289). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Also, the court does not assume that plaintiffs can prove facts that they have not alleged or that defendants have violated the law in ways that have not been alleged.  *Id.* at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citations, brackets, and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to

relief above the speculative level . . . ." *Id.* (citation omitted).  Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, that is to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

## III. DISCUSSION

### A.  Count VI–Racial Discrimination and Retaliation Under Title VII

Oztekin's Motion seeks dismissal of plaintiffs' claims of unlawful racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), pled against Oztekin in his individual capacity under Count VI of the Complaint.  (Doc. 7 ¶ 4.)  Count VI of the Complaint incorporates by reference Counts I - V.  (Doc. 1 ¶ 160.)  Counts I and IV assert against Kent claims of racial discrimination and retaliation in violation of Title VII, respectively.  (*Id.* ¶¶ 133-35, 147-51.)  Oztekin argues that plaintiffs fail to state claims against him under Title VII,

because "Title VII provides for claims only against an 'employer'" as that term is defined in the statute.  (Doc. 7 ¶ 4.)  The court agrees.  The allegations in the Complaint, even if accepted as true, fail to state Title VII claims against Oztekin.

Title VII states that it is unlawful for "an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's race [or] color."  42 U.S.C. § 2000e-2(a)(1).  The retaliation provision of Title VII further makes it unlawful "for an employer to discriminate against any . . . employee . . . because [the employee] has opposed any practice made an unlawful employment practice" under the statute.  *Id.* § 2000e-3(a).  Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  *Id.* § 2000e(b).  Despite the statute's inclusion of agents within the definition of "employer," the Eleventh Circuit has "expressly [held] that relief under Title VII is available against only the employer and *not against individual employees* whose actions would constitute a violation of the Act." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (per curiam) (emphasis added); *see also Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) ("'The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.'" (quoting *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991))); *Tompkins v. Barker*, No. 2:10cv1015-MEF, 2011 WL

3583413, at *2-3 (M.D. Ala. July 26, 2011) (following *Dearth* and dismissing Title VII

discrimination and retaliation claims against all individual defendants); *Cannova v.*

*Breckenridge Pharm., Inc.*, No. 08-81145-CIV, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9,

2009) (dismissing Title VII retaliation claim alleged against defendant in his individual

capacity based on the "clear" and binding authority in *Dearth*);  *Moss v. W & A Cleaners*,

111 F. Supp. 2d 1181, 1186 n.8 (M.D. Ala. 2000) ("The Eleventh Circuit has established

that the reference [in Title VII] to an employer's agent serves to establish repondeat

superior liability and not individual liability of agents." (citing *Mason v. Stallings,* 82

F.3d 1007, 1009 (11th Cir. 1996))).

        Plaintiffs' Title VII claims against Oztekin are due to be dismissed.  As Oztekin

correctly points out in his Brief, Title VII does not provide for claims against employees

sued in their individual capacities.  (Doc. 8 at 4-5.)  Plaintiffs' Response offers no

substantive argument in opposition except that the allegations in the Complaint comply

with Rule 8 of the Federal Rules of Civil Procedure and are sufficient to state claims for

discrimination and retaliation against Oztekin.  (Doc. 15 at 3-5.)  The Title VII claims in

Count VI of the Complaint will be dismissed with prejudice.

### B. Count VI–Racial Discrimination and Retaliation Under Section 1981

        Oztekin's Motion seeks dismissal of plaintiffs' claims of unlawful racial

discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") pled

against Oztekin in his individual capacity.  (Doc. 7 ¶ 5.)  As stated above, Count VI of the

Complaint incorporates by reference Counts I - V.  (Doc. 1 ¶ 160.)  Counts II and III

assert against Kent claims of racial discrimination and retaliation in violation of Section

1981, respectively.  (*Id.* ¶¶ 137-39, 141-45.)  Oztekin argues *inter alia* that plaintiffs fail

to state a claim of hostile work environment against him because the alleged

discriminatory acts are not sufficiently severe or persuasive to constitute an actionable

claim under Section 1981.  (Doc. 8 at 9-11.)  Oztekin also argues that the Complaint fails

to state a claim of retaliation against him because plaintiffs do not allege Oztekin engaged

in any retaliatory conduct and that any purported retaliatory acts were not materially

adverse under Section 1981.  (*Id.* at 6-8.)

Section 1981 safeguards an individual's freedom from racial discrimination and

retaliation regarding his rights "to make and enforce contracts . . . and to the full and

equal benefit of all laws and proceedings."  It has long been held that Section 1981

applies to workplace discrimination based on race.  *See Johnson v. Ry. Express Agency,

Inc.*, 421 U.S. 454, 459-60 (1975).  "Thus, § 1981 provides a cause of action for race-

based employment discrimination including wrongful termination, retaliation, and a

racially hostile work environment."  *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303,

1315 (M.D. Ala. 2010).  The Eleventh Circuit has held that claims for race discrimination

are cognizable under both Title VII and Section 1981 and "'have the same requirements

of proof and use the same analytical framework.'"  *Blue v. Dunn Constr. Co., Inc.*, 2011

WL 5903535, at *1 (11th Cir. 2011) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d

1318, 1330 (11th Cir. 1998)).  This also applies to claims of retaliation under Section

1981.  *See CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1955 (2008); *Selby v. Tyco*

*Healthcare Grp., L.P.*, 301 F. App'x 908, 912 (11th Cir. 2008) (per curiam).  However,

unlike claims under Title VII, Section 1981 includes claims made against defendants in

their individual capacity.  *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1176 (11th

Cir. 2003).

**1. Racial Discrimination Claims Against Oztekin Under Section 1981–**

   **Hostile Work Environment**

Count VI of the Complaint appears to allege claims of racial discrimination hostile

work environment against Oztekin: "The conduct alleged herein has altered terms and

conditions of Plaintiffs' employment and is substantially interfering with Plaintiffs'

employment."  (Doc. 1 ¶ 162.)  To establish a claim of hostile work environment under

Section 1981, a plaintiff must allege the following:

> (1) that he [or she] belongs to a protected group; (2) that he [or
> she] has been subject to unwelcome harassment; (3) that the
> harassment [was] based on a protected characteristic of the
> employee . . . ; (4) that the harassment was sufficiently severe or
> pervasive to alter the terms and conditions of employment and
> create a discriminatorily abusive working environment; and (5)
> that the employer is responsible for such environment under
> either a theory of vicarious or of direct liability.

*Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (alteration in original) (quoting *Miller*

*v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).  Oztekin contends that

the Complaint fails to allege that his conduct was sufficiently severe or pervasive such that

it altered the terms and conditions of plaintiffs' employment.  *See Melton*, 705 F. Supp. 2d at 1340 ("Generally speaking, element four is where most hostile work environment claims get caught up.").  The severity of the alleged discriminatory conduct is measured objectively from the perspective of a reasonable person and subjectively from the plaintiff's perspective. *Bryant*, 575 F.3d at 1297.  Objective severity is based on the surrounding circumstances; however, the court looks to factors such as, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Edmond v. Univ. of Miami*, 441 F. App'x 721, 725 (11th Cir. 2011).  "Teasing, offhand comments, and isolated incidents that are not extremely serious will not amount to discriminatory changes in the terms and conditions of employment."  *Alexander v. Opelika City Sch.*, 352 F. App'x 390, 392 (11th Cir. 2009).  "A plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at him."  *Melton*, 705 F. Supp. 2d at 1341 (citing *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995)).

In addition to the generalized statements regarding discrimination by employees and supervisors at Kent, the Complaint contains a number of specific allegations recounting Oztekin's racially charged comments disparaging defendants and other black employees as well as comments downplaying other instances of discriminatory conduct at Kent.  At a meeting with Jones, Oztekin told Jones to "'Shut [his] mouth'" about an incident where another Kent employee attempted to place a noose around Jones's neck.  (Doc. 1 ¶ 46.)

10

Mosley also attended a meeting with Oztekin regarding the same incident, and Oztekin instructed Mosley "'to forget about [it]'".  (*Id.* ¶ 87.)  At the same meeting, Oztekin said "repeatedly . . . 'You people are bringing down the company'" and "You people have too much pride."  (*Id.* ¶ 89-90.)  Oztekin openly objected to the placement of a black employee in the front office and stated, "You don't put those kind of people in there."  (*Id.* ¶ 58.) Oztekin openly excluded Jones from a Foremen's meeting, and exclaimed to the Plant Manager, "Don't bring the big Black guy to the meetings."  (*Id.* ¶ 59.)  On another occasion, Oztekin "scream[ed], 'You people are causing the company problems'" and "'what would you people do for money?'"  (*Id.* ¶ 93.)  Henderson observed Oztekin refer to Henderson and other black Kent employees as "You People."  (*Id.* ¶ 119.)  Plaintiffs collectively allege a number of remarks which could certainly be considered as creating a racially hostile environment.  However, upon consideration of the allegations made by each plaintiff separately as to defendant Oztekin, the court finds that accepting all allegations as true, there are insufficient allegations to survive defendant's Oztekin's Motion to Dismiss plaintiffs' claims (again, considered separately) under Section 1981 for a racially hostile work environment.  Therefore, these claims will be dismissed without prejudice.[4]

---

[4]Since these claims are dismissed without prejudice the individual plaintiffs may attempt to replead these claims.  If a § 1981 hostile environment claim is replead against defendant Oztekin, the Amended Complaints should contain allegations as to what the particular plaintiff saw, heard, knew, or experienced with regard to any racial comments or conduct by Oztekin.

## 2. Retaliation Claims Under Section 1981 Against Oztekin

Oztekin also challenges the sufficiency of plaintiffs' retaliation claims under Section 1981. Section 1981 can include claims by employees who have endured retaliatory treatment for opposing discrimination against themselves and other coworkers. *See, e.g.*, *Humphries*, 128 S. Ct. at 1954 ("[Section 1981] encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract-related 'right.' "); *Tucker v. Talladega City Sch.*, 171 F. App'x 289, 295 (11th Cir. 2006) ("§ 1981 encompasses a cause of action for retaliation . . . for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination."). A retaliation claim under Section 1981 requires that the claimant employee allege and prove that "'[ (1) ] he engaged in statutorily protected activity, [ (2) ] he suffered a materially adverse action, and [ (3) ] there was some causal relation between the two events.'" *Selby*, 301 F. App'x at 912 (alteration in original) (quoting *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir. 2008)).

### Plaintiffs Mosley and Warren

The Complaint fails to allege that Oztekin undertook or facilitated any adverse action against Mosley and Warren in retaliation for engaging in protected activity. Count III, (retaliatory discrimination in violation of Section 1981) as incorporated under Count VI pled against Oztekin, asserts general and conclusory allegations regarding the conduct of Kent, the employer. (Doc. 1 ¶¶ 141-45.) Count VI adds nothing to the incorporated paragraphs

that could plausibly suggest Oztekin retaliated against Mosley and Warren.  Finally, the broad allegations elsewhere in the complaint, which refer to retaliation by "Kent" and unnamed Kent employees or management, are insufficient to state a plausible retaliation claim against Oztekin by plaintiffs Mosley and Warren.  The Section 1981 retaliation claims alleged by Mosley and Warren against Oztekin will be dismissed without prejudice.

**Plaintiff Jones**

Jones fails to state a claim of retaliation against Oztekin.  The only instance pled in the Complaint suggesting that Oztekin retaliated against Jones is Jones's claim that Oztekin excluded Jones from foremen meetings.  (Doc. 1 ¶ 59.)  Even assuming that excluding Jones from the meetings was causally related to a protected expression or activity, the court finds that the alleged retaliatory acts, exclusion from foremen meetings, do not constitute adverse employment actions.  In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court explained that "to separate significant from trivial harms," an actionable retaliatory act must be deemed materially adverse.  548 U.S. 53, 68 (2006).  The conduct must be such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (internal quotation marks and citations omitted); *see also Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (requiring in the absence of an ultimate employment decision such as termination or demotion that the plaintiff show an adverse employment action by demonstrating a "*serious and material* change in the terms, conditions, or privileges of [his] employment" (internal quotation marks and citations omitted)).  The

court finds that excluding Jones from the meetings was not materially adverse and would not dissuade a reasonable worker from reporting discrimination. *Bell v. Crowne Mgmt., LLC*, 844 F. Supp. 2d 1222, 1238 (S.D. Ala. 2012) ("Nor is exclusion from a meeting an adverse employment action or anything remotely approaching one.").  Jones's claim of retaliation against Oztekin will be dismissed without prejudice.

**Plaintiff Henderson**

The court finds that Henderson fails to state a claim of retaliation against Oztekin. However, the claim bears further discussion based on plaintiffs' claim that false accusations against Henderson were made after Henderson filed his EEOC complaint, (doc. 1 ¶ 122), Henderson's subsequent termination "under the cloud" of the same accusations, (doc. 1 ¶ 124), and Oztekin's alleged defamatory statements against Henderson, (doc. 1 ¶ 170). Henderson engaged in protected expression when he filed a complaint with the EEOC, (doc. 1 ¶ 123). *See Tucker*, 171 F. App'x at 296.  Henderson also suffered an adverse employment action when he was terminated by Kent on October 27, 2011, (doc. 1 ¶ 124). *See id.*  Thus, the only issue before the court is whether the allegations in the Complaint are sufficient to infer a causal relation between plaintiff Henderson's protected activity and any alleged adverse action by Oztekin.   *Selby*, 301 F. App'x at 912.

Oztekin contends that the Complaint fails to state that Oztekin had any role in any retaliatory action against plaintiff Henderson.  While it is true that Count VI does nothing more than summarily assert that Oztekin violated Section 1981, elsewhere in the Complaint,

plaintiffs allege that in retaliation for filing his EEOC complaint, Henderson was "unfairly accused without proof of provocation of assaulting fellow employees and of encouraging the same" (doc. 1 ¶ 122),  and that Henderson was "subsequently terminated . . . by Kent under the cloud of these same false allegations." (*Id.* ¶ 124.)  Oztekin is implicated in these alleged retaliatory statements by Henderson's claim (under Count VIII–Defamation) that Oztekin "accused [him] of assaulting a fellow Kent employee." (*Id.* ¶ 170.)

"To establish a causal connection, a plaintiff must show that the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (alteration in original) (internal quotation marks and citation omitted), *cert. denied*, 121 S. Ct. 772 (2001).   The Complaint alleges that "Kent" (the employer) terminated Henderson and there is no suggestion that Oztekin was a decision maker or involved in the decision in any way or that Oztekin even knew of Henderson's protected activity.  Thus, the court finds that the Complaint fails to state a claim of retaliation against defendant Oztekin because there are no factual allegations on which to infer a causal relationship between plaintiff Henderson's protected activity and any adverse action by defendant Oztekin. Henderson's claim of retaliation against Oztekin will be dismissed without prejudice.

### C. Count VI–Negligence

In addition to discrimination and retaliation under Title VII and 1981, Count VI of the Complaint purports to state a claim of negligence against Oztekin. (Doc. 1 ¶¶ 160-63.)  It

is unclear on the face of the Complaint, however, whether plaintiffs assert against Oztekin a claim of ordinary negligence or negligent training, retention, and supervision.  Count VI of the Complaint incorporates by reference Count V, titled "Negligence (as to Defendant Kent)."  (*Id.* ¶¶ 153-58, 160.)  Despite the heading, Count V states that "Kent has been negligent in training, retaining and supervising managers and others described herein."  (*Id.* ¶ 155.)  Oztekin's Motion and Brief in Support address ordinary negligence and negligent training; however, plaintiffs' Response states that Count VI only asserts a claim of negligence and that "Plaintiffs do not purport, by adopting previous allegations in the Complaint, to bring Negligent Supervision, Training, or Retention Claims against Defendant Oztekin." (Doc. 15 at 7 n.4.)  Accordingly, the court only considers whether plaintiffs state a claim of negligence against Oztekin.

Plaintiffs fail to state a claim of negligence against Oztekin.  In Alabama, the elements of negligence include "'duty, a breach of that duty, causation, and damage.'"  *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001)).  "'Whether there is a duty is the threshold inquiry in a negligence case.  It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty.'"  *Roebuck v. Case Corp.*, No. 4:06-CV-0221-RDP, 2006 WL 6861849, at *4 (N.D. Ala. Mar. 20, 2006) (quoting *Morris v. Merritt Oil Co.*, 686 So. 2d 1139, 1141 (Ala. 1996)).  Nowhere in Count VI or elsewhere in the Complaint do plaintiffs identify what duty Oztekin owed plaintiffs or whether he breached said duty.

16

Although Count VI incorporates Count V–"Negligence (as to Defendant Kent)"–the claims under the latter refer exclusively to the alleged negligence of Kent, not Oztekin.  (Doc. 1 ¶¶ 153-58.)  Further highlighting the absence of any facts pertaining to negligent conduct is the summary allegation in Count VI that "Oztekin's previously alleged egregious conduct is in violation of all incorporated *statutes*."  (*Id.* ¶ 161 (emphasis added).)  Plaintiffs' Response claims that Oztekin breached his managerial duty to plaintiffs "to create a safe working environment, free from racial discrimination . . . by perpetuating the racially discriminatory, harassing, and retaliatory environment."  (Doc. 15 at 7.)[5]  Such allegations are not found within the Complaint and cannot be considered on a Motion to Dismiss.  *See Thaeter*, 449 F.3d at 1352 ("'When considering a motion to dismiss, . . . the court limits its consideration to the pleadings and exhibits attached thereto.'" (quoting *Grossman*, 225 F.3d at 1231)).  Plaintiffs' negligence claim under Count VI will be dismissed without prejudice.

### D. Count VIII–Defamation and Defamation *per se*[6]

In Count VIII of the Complaint, plaintiff Henderson asserts common law claims of defamation and defamation *per se* against Kent, Oztekin, and Harbison for allegedly accusing

---

[5]The court is unaware of any law establishing such a duty.

[6] Plaintiffs' Response purports to supplement their claims of defamation with additional facts as well as two exhibits attached thereto.  Again, for purposes of ruling on Oztekin's Motion, the court will not address matters outside the pleadings.  *See Thaeter*, 449 F.3d at 1352.  Further, the court ignores and excludes the exhibits attached to plaintiffs' Response.  *See* FED. R. CIV. P. 12(d).

Henderson "of assaulting a fellow Kent employee." (Doc. 1 ¶¶ 170-75.)  The court addresses the claims of defamation separately as they relate to Oztekin.

### 1. Defamation

Under Alabama common law, a claim of defamation requires that the plaintiff allege: "(i) that the defendant was at least negligent; (ii) in publishing; (iii) a false and defamatory statement to another; (iv) concerning the plaintiff; (v) which is either actionable without having to prove special harm or actionable upon allegations and proof of special harm." *Watters v. La. Pac. Corp.*, 156 F. App'x 177, 179 (11th Cir. 2005) (per curiam) (quoting *Gary v. Crouch*, 867 So. 2d 310, 315 (Ala. 2003)).   The element of publication requires "a communication of a defamatory matter to a third person."  *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1093 (Ala. 1988); *see also Cabble v. Claire's Stores, Inc.*, 919 F. Supp. 397, 402 (M.D. Ala. 1996) ("publication can be shown by a plaintiff only 'by proof of communication of the defamatory matter to someone other than himself.'" (quoting *Nelson*, 534 So. 2d at 1092)); *Willis v. Demopolis Nursing Home, Inc.*, 336 So. 2d 1117, 1120 (Ala. 1976) ("If there is no publication, there is no defamation.").

The court focuses on whether Henderson sufficiently pled the element of publication to a third party.  Regarding Henderson's ordinary defamation claim, there are only two instances in the Complaint where it is alleged Oztekin communicated falsehoods to others concerning Henderson.  The Complaint states that Kent, Oztekin, and Harbison "accused [Henderson] of assaulting a fellow Kent employee" and that said accusations "were

18

communicated verbally in such a manner that they were heard by third parties." (Doc. 1 ¶ 171.) Henderson provides no other facts implicating Oztekin in this instance of purported publication. Based on such vague allegations, it cannot be plausibly inferred from the face of the Complaint that Oztekin communicated the accusations to a third party. Such a "'formulaic recitation'" and "naked assertion" without "further factual enhancement" fails to adequately plead the element of publication, and thus, Henderson fails to state a claim of defamation as to this specific allegation. *Twombly*, 550 U.S. at 555, 557.

Next, the Complaint alleges that Kent, Oztekin, and Harbison additionally "subjected . . . Henderson to two 'interrogations' in which more defamatory remarks were leveled against . . . Henderson, with these remarks being overheard by Court Reporters brought to the Kent facility to record . . . Henderson's 'statements' in defense of the defamatory remarks." (Doc. 1 ¶ 173.) The Alabama Supreme Court has recognized that communication of an alleged defamatory statement by a defendant to his co-employee or agent retained to "compile information" for purposes of investigating matters in the workplace upon which the defamatory statement is based does not constitute publication to a third party. *See Brackin v. Trimmier Law Firm*, 897 So. 2d 207, 222-23 (Ala. 2004). By Henderson's own admission in the Complaint, the court reporters who overheard the accusations at issue were "*brought* to the Kent facility *to record . . . Henderson's 'statements' in defense of the defamatory remarks*." (Doc. 1 ¶ 173 emphasis added.) Based on the allegations in the Complaint, the court reporters acted as agents of Kent and duly accomplished the task for which they were

19

"brought" to Kent to perform: take statements from Henderson regarding the contested allegations "leveled against" him by Oztekin and others.  (*Id.*)  The court finds that Oztekin's alleged statements overheard by the court reporters were not published to a third party for purposes of Henderson's claim of defamation.

For the foregoing reasons, the court concludes that Henderson fails to state a claim of defamation against Oztekin.  The claims will be dismissed without prejudice.

### 2. Defamation *per se*

Henderson also claims that certain statements related to his employment at Kent communicated by Kent to the Alabama Department of Industrial Relations ("ADIR") constituted defamation *per se*.  (Doc. 1 ¶ 174.)  Defamation or slander *per se* is a variation of a typical claim of slander requiring that the defamatory statement involve "'an imputation of an indictable offense involving infamy or moral turpitude.'"  *Liberty Nat. Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 157 (Ala. 2002) (quoting *Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978)).  "Words found to be slander per se relieve the plaintiff of the requirement of proving actual harm to reputation or any other damage in order to recover nominal or compensatory damages."  *Id.* (internal quotation marks and citations omitted).  Henderson alleges that after his termination from Kent, he applied to the ADIR for unemployment benefits but was denied benefits based on assertions made by Kent to ADIR that Henderson "was terminated for brandishing a weapon at his co-workers."  (Doc. 1 ¶¶ 124-26.)

Henderson further asserts that publication of such false accusations to ADIR necessarily involving his employment at Kent constituted defamation *per se*.

Henderson fails to state a claim of defamation *per se* against Oztekin.  First, there is no allegation in the Complaint that Oztekin personally communicated any information to the ADIR.  Second, it is well-settled under Alabama law that employee information sent by employers to ADIR is privileged and not subject to an action for defamation:

> All letters, reports, communications, and other matters, written or oral, from employer . . . to the director [of the ADIR] or any of his agents, representatives, or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered, or made in connection with the requirements and administration of this chapter, shall be absolutely privileged and shall *not be made the subject matter or basis for any civil action for slander or libel in any court.*

ALA. CODE § 25-4-116 (1975) (emphasis added); *see also Watters*, 156 F. App'x at 179 ("Alabama statute provides that communications made in connection with the administration of the Department of Industrial relations are absolutely privileged and cannot form the basis for an action for slander or libel in any court." (citing ALA. CODE § 25-4-116)); *Smith v. Boyd Bros. Transp., Inc.*, 406 F. Supp. 2d 1238, 1246 (M.D. Ala. 2005) ("[Section 25-4-116's] plain language provides [defendant] with an absolute privilege from liability for slander or libel." (citations omitted)).  Thus, to the extent that Henderson claims that Oztekin defamed him by way of Kent publishing the statements to ADIR, the Complaint fails to state a cause of action because such statements are

absolutely privileged under Alabama law.  Henderson's claim of defamation *per se* as to Oztekin will be dismissed without prejudice.

### IV. CONCLUSION

Based on the foregoing and in accordance with the court's Order entered contemporaneously herewith, Oztekin's Motion to Dismiss will be granted as to all claims alleged against him in the Complaint.  All claims, with the exception of plaintiffs' Title VII claim against Oztekin, may be replead against the defendant.

**DONE**, this 17th day of September, 2012.


*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE