FILED
2012 Sep-17  PM 01:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLIE J. JONES;<br>CORTNEY MOSLEY;<br>ROBERT HENDERSON; and<br>JOHN SEAY WARREN, | }<br>}<br>}<br>}<br>} | |
| Plaintiffs, | } | CASE NO. 2:12-cv-00251-SLB |
| v. | }<br>}<br>} | |
| THE KENT SALES & SERVICE<br>CORPORATION;<br>M.A. OZTEKIN;<br>SHARRON HARBISON; and<br>JIM THOMAS, | }<br>}<br>}<br>}<br>}<br>} | |
| Defendants. | } | |

## <u>MEMORANDUM OPINION</u>

This case is presently before the court on defendant Sharron Harbison's Partial Motion to Dismiss.  (Doc. 5.)[1]  Upon consideration of the Motion,[2] the relevant law, and the arguments of counsel, the court is of the opinion that plaintiff's Motion is due to be denied with respect to plaintiff Jones's Section 1981 claim against Harbison and granted as to all remaining claims.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] Plaintiffs point out and Harbison acknowledges that her Motion, while styled as a partial motion to dismiss, actually seeks dismissal of all claims relating to Harbison.  (Doc. 14 at 3 n.2; doc. 17 at 1 n.1.)  The court notes that the incorrect title does not affect this Opinion as each count raised in the Motion will be addressed.

# I. FACTS AND PROCEDURAL HISTORY[3]

Plaintiffs Charlie Jones ("Jones"), Cortney Mosley ("Mosley"), Robert Henderson ("Henderson"), and John Seay Warren ("Warren") (collectively "plaintiffs") are current and former employees of defendant, Kent Sales & Service Corporation ("Kent"), and are current or former coworkers of defendants M.A. Oztekin ("Oztekin"), Sharron Harbison ("Harbison"), and Jim Thomas ("Thomas") (collectively "defendants"). (*See* doc. 1.) Plaintiffs are African-Americans and allege that they endured a "continuing pattern and practice of racial discrimination and retaliation" while employees of Kent. (*Id.* ¶¶ 1, 10-14.) The Complaint alleges that a multitude of racially discriminatory acts occurred during plaintiffs' tenure at Kent and that racially derogatory slurs and epithets were frequently directed at plaintiffs. (*See id.* ¶¶ 26-131.) The plaintiffs collectively assert claims against Kent for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. (Doc. 1 ¶¶ 132-51.) Plaintiffs also collectively assert a common law claim of negligence against Kent. (*Id.* ¶¶ 152-58.) Additionally, plaintiffs collectively assert their Title VII, Section 1981, and negligence claims against defendants Oztekin and Harbison in their individual capacities. (*Id.* ¶¶ 159-68.) Henderson individually brings claims of defamation against Kent, Oztekin, and Harbison. (*Id.* ¶¶ 169-75.) These claims are based on allegations that

---

[3] The facts are drawn from the Complaint and for purposes of ruling on the Motion to Dismiss are accepted as true.

Harbison and others falsely accused Henderson of assaulting co-workers and brandishing a weapon in the presence of co-workers. (*Id.* ¶¶ 121-22, 126, 170-74.)  Henderson was terminated on October 27, 2011 allegedly in connection with or as a result of these accusations. (*Id.* ¶ 124.)

Prior to initiating this action, plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 29, 2011. (*Id.* ¶ 6.)  Plaintiffs were issued determination letters dated September 8, 2011, which "informed Plaintiffs that [the EEOC] found that the Defendants subjected the Plaintiffs [to] unlawful racial harassment." (*Id.*)  Jones, Mosley, and Henderson were issued Right to Sue notices dated January 12, 2012. (*Id.* ¶ 8.)  Warren was issued a Right to Sue notice dated January 18, 2012. (*Id.* ¶ 9.)  Thereafter, plaintiffs filed their Complaint on January 24, 2012. (*See* doc. 1.)

## II. MOTION TO DISMISS STANDARD

Harbison moves to dismiss the Complaint for failure to state a claim upon which relief can be granted.  The purpose of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of plaintiffs' statement of a claim for relief. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997) (per curiam).  "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon

3

which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal quotation marks and citations omitted). The allegations in the Complaint are accepted as true and are construed in the light most favorable to plaintiff. *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011). "[T]he complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face.*'" *Id.* (quoting *Am. Dental Ass'n*, 605 F.3d at 1289). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Also, the court does not assume that plaintiffs can prove facts they have not alleged or that defendants have violated the law in ways that have not been alleged. *Id.* at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to

4

relief above the speculative level . . . ." *Id.* (citation omitted).  Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, that is to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

## III. DISCUSSION

### A.  Count VII–Racial Discrimination and Retaliation Under Title VII[4]

Harbison's Motion seeks dismissal of plaintiffs' claims of unlawful racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), pled against Harbison in her individual capacity

---

[4]This count is entitled:  "Cause of Action VII - Racial Discrimination, Retaliation and Negligence (As to Defendant Sharron Harbison)."  The count purports to be brought pursuant to Title VII and 42 U.S.C. § 1981, neither of which provide relief for "negligence" of a defendant.

under Count VII[5] of the Complaint.  (Doc. 5 ¶ 4.)  Count VII of the Complaint

incorporates by reference Counts I - V.  (Doc. 1 ¶ 165.)  Counts I and IV assert against

defendant Kent claims of racial discrimination and retaliation in violation of Title VII,

respectively.  (*Id.* ¶¶ 133-35, 147-51.)  Harbison argues that plaintiffs fail to state claims

against her under Title VII, because "Title VII provides for claims only against an

'employer'" as that term is defined in the statute.  (Doc. 6 at 5.)  The court agrees.  The

allegations in the Complaint, even if accepted as true, fail to state Title VII claims against

Harbison because the statute does not authorize such claims against individual employees.

Title VII states that it is unlawful for "an employer . . . to discriminate against any

individual with respect to his . . . terms, conditions, or privileges of employment, because

of such individual's race [or] color."  42 U.S.C. § 2000e-2(a)(1).  The retaliation

provision of Title VII further makes it unlawful "for an employer to discriminate against

any . . . employee . . . because [the employee] has opposed any practice made an unlawful

employment practice" under the statute.  *Id.* § 2000e-3(a).  Title VII defines an employer

as "a person engaged in an industry affecting commerce who has fifteen or more

employees for each working day in each of twenty or more calendar weeks in the current

or preceding calendar year, and any agent of such a person."  *Id.* § 2000e(b).  Despite the

statute's inclusion of agents within the definition of "employer," the Eleventh Circuit has

---

[5] Harbison's Motion and Brief in Support cites Count VIII of the Complaint in reference
to plaintiffs' Title VII and Section 1981 claims against Harbison.  Count VII of the Complaint
contains said claims against Harbison and her Motion will be construed accordingly.

"expressly [held] that relief under Title VII is available against only the employer and *not against individual employees* whose actions would constitute a violation of the Act." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (per curiam) (emphasis added); *see also Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) ("'The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.'" (quoting *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991))); *Tompkins v. Barker*, No. 2:10cv1015-MEF, 2011 WL 3583413, at *2-3 (M.D. Ala. July 26, 2011) (following *Dearth* and dismissing Title VII discrimination and retaliation claims against all individual defendants); *Cannova v. Breckenridge Pharm., Inc.*, No. 08-81145-CIV, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9, 2009) (dismissing Title VII retaliation claim alleged against defendant in his individual capacity based on the "clear" and binding authority in *Dearth*); *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1186 n.8 (M..D. Ala. 2000) ("The Eleventh Circuit has established that the reference [in Title VII] to an employer's agent serves to establish repondeat superior liability and not individual liability of agents." (citing *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir. 1996))).

Plaintiffs' Title VII claims against Harbison which are contained in "Cause of Action VII" of plaintiffs' Complaint are due to be dismissed.  Count VII of the Complaint, which incorporates the Title VII claims against Kent, applies the same claims against Harbison "in her individual capacity."  (Doc. 1 ¶ 165.)  As Harbison correctly

7

points out in her Brief, Title VII does not provide for claims against employees sued in their individual capacities.  Plaintiffs' Response offers no substantive argument in opposition except that the allegations in the Complaint comply with Rule 8 of the Federal Rules of Civil Procedure and are sufficient to state claims for discrimination and retaliation against Harbison.  (Doc. 14 at 3-5.)   The Title VII claims in Count VII of the Complaint will be dismissed with prejudice.

### B. Count VII–Racial Discrimination and Retaliation Under Section 1981

Harbison's Motion seeks dismissal of plaintiffs' claims of unlawful racial discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981"), pled against Harbison in her individual capacity under Count VII of the Complaint.  (Doc. 5 ¶ 5.)  As stated above, Count VII of the Complaint incorporates by reference Counts I - V. (Doc. 1 ¶ 165.)  Counts II and III assert against Kent claims of racial discrimination and retaliation in violation of Section 1981, respectively.  (*Id.* ¶¶ 137-39, 141-45.)  Harbison argues that plaintiffs Henderson, Mosley, and Warren fail to state claims against her under Section 1981 because the Complaint fails to specifically allege Harbison's involvement in any discriminatory and retaliatory acts against these plaintiffs.   (Doc. 6 at 6.)  The court agrees.  Thus, any such claims will be dismissed.

Harbison also contends that the Complaint fails to state a retaliation claim regarding plaintiff Jones because the alleged retaliatory conduct against Jones is not actionable adverse action under Section 1981.  (*Id.* at 6-7.)  The court disagrees with this

8

argument and finds that plaintiff Jones states a claim of retaliation under Section 1981 against Harbison.

Section 1981 safeguards an individual's freedom from racial discrimination and retaliation regarding his rights "to make and enforce contracts . . .  and to the full and equal benefit of all laws and proceedings."  It has long been held that Section 1981 applies to workplace discrimination based on race.  *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).  The Eleventh Circuit has held that claims for race discrimination are cognizable under both Title VII and Section 1981 and "'have the same requirements of proof and use the same analytical framework.'"  *Blue v. Dunn Constr. Co., Inc*., 453 F. App'x 881, 883 (11th Cir. 2011) (per curiam) (quoting *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1330 (11th Cir.1998)).  This also applies to claims of retaliation under Section 1981.  *See CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1955 (2008); *Selby v. Tyco Healthcare Grp., L.P.*, 301 F. App'x 908, 912 (11th Cir. 2008) (per curiam).

**1. Racial Discrimination Claims Against Harbison Under Section 1981**

Unlike claims under Title VII, claims made against defendants in their individual capacity are cognizable under Section 1981.  *See Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1176 (11th Cir. 2003).  A plaintiff may state a claim of discrimination under Title VII or Section 1981 by alleging facts establishing direct evidence of discrimination or circumstantial evidence that creates an inference of discrimination.  *Blue*, 453 F. App'x

at 883 (citation omitted).  However, a discrimination claim under Section 1981 alleged against the defendant in her individual capacity necessarily requires some causal connection between the defendant and the discriminatory acts.  *See, e.g.*, *Burstein v. Emtel, Inc.*, 137 F. App'x 205, 208 (11th Cir. 2005) (finding individual was not liable under Section 1981 where he did not participate in alleged discriminatory decision); *Page v. Winn-Dixie Montgomery*, *Inc.*, 702 F. Supp. 2d 1334, 1355 (S.D. Ala. 2010) ("Federal courts have held that a claim for individual liability under § 1981 requires an affirmative showing linking the individual defendant with the discriminatory action." (citations omitted)); *Crawley v. Paskert-Johnson Co.*, No. 807-CV-1789-T-23TGW, 2008 WL 4793650, at *1 (M.D. Fla. Nov. 3, 2008) ("A claim for individual liability under Section 1981 requires 'some affirmative link to causally connect the actor with the discriminatory action.'" (quoting *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds*, *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1228 (10th Cir. 2000))).

Plaintiffs' Section 1981 racial discrimination claims against Harbison are due to be dismissed.  Aside from sweeping statements claiming that all defendants or Kent employees generally discriminated against plaintiffs or subjected them to racial slurs and epithets, the Complaint is devoid of any factual allegations that Harbison engaged in any discriminatory conduct based on the plaintiffs' race.  Count VII merely incorporates by reference the Section 1981 claims against defendant Kent.  (Doc. 1 ¶ 165.)  Count VII

10

summarily states that "Harbison's egregious conduct is in violation" of the incorporated statutes and that said conduct altered and interfered with the terms and conditions of plaintiffs' employment resulting in damages.  (*Id.* ¶¶ 166-68.)  These broad allegations are unsupported by any factual allegations, and are insufficient to state a claim on which relief may be granted.  Additionally, the court will not consider the supplemental and conclusory "facts" injected into plaintiffs' Response, which claims that Harbison used her supervisory role to engage in and perpetuate the alleged discrimination.  (Doc. 14 at 5-6.) *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("'When considering a motion to dismiss, . . . the court limits its consideration to the pleadings and exhibits attached thereto.'" (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam)))*.*  Plaintiffs' Section 1981 racial discrimination claims against Harbison will be dismissed as the Complaint fails to establish any plausible causal connection between Harbison and the alleged discrimination.

## 2. Retaliation Claims Under Section 1981 Against Harbison

Harbison also challenges the sufficiency of plaintiffs' Section 1981 retaliation claims against her.  Section 1981 can include claims by employees who have endured retaliatory treatment for opposing discrimination against themselves and other co-workers.  *See, e.g.*, *Humphries*, 128 S. Ct. at 1954 ("[Section 1981] encompasses a complaint of retaliation against a person who has complained about a violation of another

person's contract-related 'right.'"); *Tucker v. Talladega City Sch.*, 171 F. App'x 289, 295 (11th Cir. 2006) ("§ 1981 encompasses a cause of action for retaliation . . . for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination.").  A retaliation claim under Section 1981 requires that the claimant employee allege and prove that "'[ (1) ] he engaged in statutorily protected activity, [ (2) ] he suffered a materially adverse action, and [ (3) ] there was some causal relation between the two events.'"  *Selby*, 301 F. App'x at 912 (alteration in original) (quoting *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir. 2008)).

### Plaintiffs Mosley and Warren

The Complaint fails to allege that Harbison undertook or facilitated any adverse action against plaintiffs Mosley and Warren in retaliation for engaging in protected activity.  Count III (retaliatory discrimination in violation of Section 1981), as incorporated under Count VII pled against Harbison, asserts general and conclusory allegations regarding the conduct of Kent.  (Doc. 1 ¶¶ 141-45.)  Count VII adds nothing to the incorporated paragraphs that could plausibly suggest Harbison retaliated against Mosley and Warren.  Finally, the broad allegations elsewhere in the complaint, which refer to retaliation by "Kent" and unnamed Kent employees or management, are insufficient to state a plausible retaliation claim against Harbison by plaintiffs Mosley and Warren.  The Section 1981 retaliation claims alleged by Mosley and Warren against Harbison will be dismissed without prejudice.

12

**Plaintiff Jones**

Accepting the facts in the Complaint as true, defendant's Motion to Dismiss plaintiff Jones's 1981 retaliation claim for failure to state a claim is due to be denied. Harbison contends that the alleged retaliatory conduct (suspension of plaintiff Jones for engaging in protected conduct) is not a materially adverse employment action. (Doc. 6 at 7-8.) The court disagrees. In *Burlington N. & Santa Fe Ry. Co. v. White*, the Supreme Court explained that "to separate significant from trivial harms," an actionable retaliatory act must be deemed materially adverse. 548 U.S. 53, 68 (2006). The conduct must be such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks and citations omitted); *see also Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (requiring in the absence of an ultimate employment decision such as termination or demotion that the plaintiff show an adverse employment action by demonstrating a "*serious and material* change in the terms, conditions, or privileges of [his] employment" (internal quotation marks and citations omitted)). However, "petty slights or minor annoyances" are not considered sufficiently adverse. *Id.* The court's inquiry is objective and a finding of retaliation "will often depend upon the particular circumstances." *Id.* at 69.

According to the Complaint, on February 10, 2011, while Jones was working at Kent, another defendant, Thomas, approached Jones from behind and attempted to place a hangman's noose around Jones's neck. (Doc. 1 ¶¶ 39-40.) Jones was questioned about

13

the incident in Kent's personnel office on February 11, 2011.  (*Id.* ¶ 43.)  Then on February 19, 2011, Jones was summoned to Kent's front office to meet with defendants Oztekin and Harbison.  (*Id.* ¶ 45.)  While the Complaint does not affirmatively state the reason Jones was called to the office, it is alleged that at the meeting, Oztekin told Jones that he "should 'Shut [his] mouth,' about the Noose incident."  (*Id.* ¶ 46.)  On a later unspecified date, the Complaint states that Jones "observed . . . a second hangman's Noose hanging on the front fence, just past the guard shack of the entrance at Kent."  (*Id.* ¶ 60.)  Jones was allegedly "subjected to retaliatory suspension by . . . Harbison for bringing the Noose to the attention of Kent."  (*Id.* ¶ 61.)  Jones alleges generally, that such conduct "has altered the terms and conditions" of his employment.  (*Id.* ¶ 167.) Construing these facts as true, the court finds that Harbison's act of suspending Jones for reporting the noose was serious and materially adverse such that it might have dissuaded a reasonable employee under similar circumstances from opposing such discrimination. Harbison's Motion to Dismiss Count VII for failure to state a claim will be denied as to Jones's Section 1981 retaliation claim.

**Plaintiff Henderson**

The court finds that Henderson fails to state a claim of retaliation against Harbison.  However, the claim bears further discussion based on Henderson's claim that false accusations were made against him after he filed his EEOC complaint, (doc. 1 ¶ 122), Henderson subsequently was terminated "under the cloud" of the same accusations,

(doc. 1 ¶ 124), and Harbison's alleged defamatory statements against Henderson, (doc. 1 ¶ 170).  Henderson engaged in protected activity when he filed a complaint with the EEOC, (doc. 1 ¶ 6).  *See Tucker*, 171 F. App'x at 296.  Henderson also suffered an adverse employment action when he was terminated by Kent on October 27, 2011, (doc. 1 ¶ 124).  Thus, the only issue before the court is whether the allegations in the Complaint are sufficient to infer a causal relation between plaintiff's protected activity and any alleged adverse actions by Harbison.  *Selby*, 301 F. App'x at 912.

Harbison contends that the Complaint fails to state that Harbison had any role in any retaliatory action against plaintiff Henderson.   While it is true that Count VII does nothing more than summarily assert that Harbison violated Section 1981, elsewhere in the Complaint, plaintiffs allege that in retaliation for filing his EEOC complaint, Henderson was "unfairly accused without proof of provocation of assaulting fellow employees and of encouraging the same," (doc. 1 ¶ 122), and that Henderson was "subsequently terminated . . . by Kent under the cloud of these same false allegations."  (*Id.* ¶ 124.)  Harbison is potentially implicated in these alleged retaliatory statements by Henderson's claim (under Count VIII–Defamation) that Harbison "accused [him] of assaulting a fellow Kent employee."  (*Id.* ¶ 170.)

"To establish a causal connection, a plaintiff must show that the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th

15

Cir. 2000) (alteration in original) (internal quotation marks and citation omitted), *cert.*
*denied*, 121 S. Ct. 772 (2001).  The Complaint alleges that "Kent" (the employer)
terminated Henderson.  There is no allegation in the Complaint that Harbison was a
decisionmaker or involved in the decision in any way or that she even knew of
Henderson's protected activity.

Thus, the court finds the Complaint fails to state a claim by plaintiff Henderson of
retaliation against defendant Harbison because there are no factual allegations to infer a
causal relationship between plaintiff's protected activity and any adverse action by
defendant Harbison.  Henderson's claim of retaliation against Harbison will be dismissed
without prejudice.

### C.  Count VII–Negligence

In addition to discrimination and retaliation under Title VII and 1981, Count VII of
the Complaint purports to state a claim of negligence against Harbison.  (Doc. 1 ¶¶ 165-
68.)  It is unclear on the face of the Complaint, however, if plaintiffs assert against
Harbison a claim of ordinary negligence or negligent training, retention, and supervision.
Count VII of the Complaint incorporates by reference Count V, titled "Negligence (as to
Defendant Kent)."  (*Id.* ¶¶ 153-58, 165.)  Despite the heading, Count V states that "Kent
has been negligent in training, retaining and supervising managers and others described
herein." (*Id.* ¶ 155.)  Harbison's Motion and Brief in Support address ordinary
negligence and negligent training; however, plaintiffs' Response states that Count VII

16

only asserts a claim of ordinary negligence and that "Plaintiffs do not purport, by adopting previous allegations in the Complaint, to bring Negligent Supervision, Training, or Retention Claims against Defendant Harbison." (Doc. 14 at 7 n.4.)  Accordingly, the court only considers Harbison's arguments regarding the sufficiency of plaintiffs' negligence claim against her.

Plaintiffs fail to state a claim of negligence against Harbison.  In Alabama, the elements of negligence include "'duty, a breach of that duty, causation, and damage.'" *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001)).  "'Whether there is a duty is the threshold inquiry in a negligence case. It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty.'" *Roebuck v. Case Corp.*, No. 4:06-CV-0221-RDP, 2006 WL 6861849, at *4 (N.D. Ala. Mar. 20, 2006) (quoting *Morris v. Merritt Oil Co.*, 686 So. 2d 1139, 1141 (Ala. 1996)).  Nowhere in Count VII (or elsewhere in the Complaint) do plaintiffs identify what duty Harbison owed plaintiffs or whether she breached said duty.  Although Count VII incorporates Count V–"Negligence (as to Defendant Kent)"–the claims under the latter refer exclusively to the alleged negligence of Kent, not Harbison.  (Doc. 1 ¶¶ 153-58.)  Further highlighting the absence of any facts pertaining to negligent conduct is Count VII's conclusory statement that "Harbison's egregious conduct is in violation of all incorporated *statutes*."  (*Id.* ¶ 166 (emphasis added).)   Plaintiffs' Response claims that Harbison breached her managerial

17

duty to plaintiffs "to create a safe working environment, free from racial discrimination . . . by perpetuating the racially discriminatory, harassing, and retaliatory environment." (Doc. 14 at 7.)  Such allegations are not found within the Complaint and cannot be considered on a Motion to Dismiss.  *See Thaeter*, 449 F.3d at 1352 ("'When considering a motion to dismiss, . . . the court limits its consideration to the pleadings and exhibits attached thereto.'" (quoting *Grossman*, 225 F.3d at 1231)).[6]  Plaintiffs' negligence claim under Count VII will be dismissed without prejudice.

### D. Count VIII–"Defamation and Defamation *per se*"[7]

In Count VIII of the Complaint, plaintiff Henderson asserts common law claims of defamation and defamation *per se* against Kent, Oztekin, and Harbison for allegedly accusing Henderson "of assaulting a fellow Kent employee."  (Doc. 1 ¶¶ 170-75.)  The court addresses the claims of defamation separately as they relate to Harbison.

### 1. Defamation

Under Alabama common law, a claim of defamation requires that the plaintiff allege "(I) that the defendant was at least negligent; (ii) in publishing; (iii) a false and defamatory statement to another; (iv) concerning the plaintiff; (v) which is either

---

[6]The court is unaware of any law establishing such a duty.

[7] Plaintiffs' Response purports to supplement their claims of defamation with additional alleged  facts as well as two exhibits attached thereto.  Again, for purposes of ruling on Harbison's Motion, the court will not address matters outside the pleadings.  *See Thaeter*, 449 F.3d at 1352.  Further, the court excludes the exhibits attached to plaintiffs' Response.  *See* FED. R. CIV. P. 12(d).

actionable without having to prove special harm or actionable upon allegations and proof of special harm." *Watters v. La. Pac. Corp.*, 156 F. App'x 177, 179 (11th Cir. 2005) (per curiam) (quoting *Gary v. Crouch*, 867 So. 2d 310, 315 (Ala. 2003)).   The element of publication requires "a communication of a defamatory matter to a third person." *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1093 (Ala. 1988); *see also Cabble v. Claire's Stores, Inc.*, 919 F. Supp. 397, 402 (M.D. Ala. 1996) ("publication can be shown by a plaintiff only 'by proof of communication of the defamatory matter to someone other than himself.'" (quoting *Nelson*, 534 So. 2d at 1092)); *Willis v. Demopolis Nursing Home, Inc.*, 336 So. 2d 1117, 1120 (Ala. 1976) ("If there is no publication, there is no defamation.").

The court focuses on whether Henderson sufficiently pled the element of publication to a third party.  Regarding Henderson's ordinary defamation claim, there are only two instances in the Complaint where it is alleged that Harbison communicated falsehoods to others concerning Henderson.  The Complaint states that Kent, Oztekin, and Harbison "accused [Henderson] of assaulting a fellow Kent employee" and that said accusations "were communicated verbally in such a manner that they were heard by third parties." (Doc. 1 ¶ 171.)  Henderson provides no other facts implicating Harbison in this instance of purported publication.  Based on such vague allegations, it cannot be plausibly inferred from the face of the Complaint that Harbison communicated the accusations to a third party.  Such a "'formulaic recitation'" and  "naked assertion" without "further

factual enhancement" fails to adequately plead the element of publication, and thus, Henderson fails to state a claim of defamation as to this specific allegation. *Twombly*, 550 U.S. at 555, 557.

Next, the Complaint alleges that Kent, Oztekin, and Harbison additionally "subjected . . . Henderson to two 'interrogations' in which more defamatory remarks were leveled against . . . Henderson, with these remarks being overheard by Court Reporters brought to the Kent facility to record . . . Henderson's 'statements' in defense of the defamatory remarks." (Doc. 1 ¶ 173.) The Alabama Supreme Court has recognized that communication of an alleged defamatory statement by a defendant to his co-employee or agent retained to "compile information" for purposes of investigating matters in the workplace upon which the defamatory statement is based does not constitute publication to a third party. *See Brackin v. Trimmier Law Firm*, 897 So. 2d 207, 222-23 (Ala. 2004). By Henderson's own admission in the Complaint, the court reporters who overheard the accusations at issue were "*brought* to the Kent facility *to record . . . Henderson's 'statements' in defense of the defamatory remarks*." (Doc. 1 ¶ 173, emphasis added.) Based on the allegations in the Complaint the court reporters acted as agents of Kent and duly accomplished the task for which they were "brought" to Kent to perform: take statements from Henderson regarding the contested allegations "leveled against" him by Harbison and others. (*Id.*) The court finds that Harbison's alleged statements overheard

by the court reporters were not published to a third party for purposes of Henderson's claim of defamation.

For the foregoing reasons, the court concludes that Henderson fails to state a claim of defamation against Harbison. The claim will be dismissed without prejudice.

## 2. Defamation *per se*

Henderson also claims that certain statements related to his employment at Kent communicated by Kent to the Alabama Department of Industrial Relations ("ADIR") constituted defamation *per se*. (Doc. 1 ¶ 174.) Defamation or slander *per se* is a variation of a typical claim of slander requiring that the defamatory statement involve "'an imputation of an indictable offense involving infamy or moral turpitude.'" *Liberty Nat. Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 157 (Ala. 2002) (quoting *Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978)). "Words found to be slander per se relieve the plaintiff of the requirement of proving actual harm to reputation or any other damage in order to recover nominal or compensatory damages." *Id.* (internal quotation marks and citations omitted). Henderson alleges that after his termination from Kent, he applied to the ADIR for unemployment benefits but was denied benefits based on assertions made by Kent to ADIR that Henderson "was terminated for brandishing a weapon at his co-workers." (Doc. 1 ¶¶ 124-26.) Henderson further asserts that publication of such false accusations to ADIR necessarily involving his employment at Kent constituted defamation *per se*.

Henderson fails to state a claim of defamation *per se* against Harbison.  First, there is no allegation in the Complaint that Harbison personally communicated any information about Henderson to ADIR.  Second, it is well-settled under Alabama law and in the Eleventh Circuit that employee information sent by employers to ADIR is privileged and not subject to an action for defamation:

> All letters, reports, communications, and other matters, written or oral, from employer . . . to the director [of the ADIR] or any of his agents, representatives, or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered, or made in connection with the requirements and administration of this chapter, shall be absolutely privileged and shall *not be made the subject matter or basis for any civil action for slander or libel in any court.*

ALA. CODE § 25-4-116 (1975) (emphasis added); *see also Watters*, 156 F. App'x at 179 ("Alabama statute provides that communications made in connection with the administration of the Department of Industrial relations are absolutely privileged and cannot form the basis for an action for slander or libel in any court." (citing ALA. CODE § 25-4-116)); *Smith v. Boyd Bros. Transp., Inc.*, 406 F. Supp. 2d 1238, 1246 (M.D. Ala. 2005) ("[Section 25-4-116's] plain language provides [defendant] with an absolute privilege from liability for slander or libel." (citations omitted)).  Thus, to the extent that Henderson claims that Harbison defamed him by way of Kent publishing the statements to ADIR, the Complaint fails to state a cause of action because such statements are

absolutely privileged under Alabama law.  Henderson's claim of defamation *per se* as to Harbison will be dismissed without prejudice.

## IV. CONCLUSION

Based on the foregoing and in accord with the court's Order entered contemporaneously herewith, Harbison's Motion to Dismiss will be denied as to Jones's claim of retaliation under Section 1981 and granted as to all remaining claims alleged against her in the Complaint.

**DONE** this 17th day of September, 2012.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE